GARRON SCHMECKPEPER, APPELLANT, V. ARNOLD KOERTJE, APPELLEE.

388 N.W.2d 51

Filed May 30, 1986. No. 84-920.

David A. Domina of Domina & Gerrard, P.C., for appellant.

Patrick J. Birmingham, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The plaintiff, Garron Schmeckpeper, appeals the judgment in his action in equity for restitution of the value of improvements placed upon the land of the defendant, Arnold Koertje. The plaintiff's assignor and son, Richard Schmeckpeper, claimed to have improved the land he farmed as tenant of Arnold Koertje, relying on Koertje's assurances that Richard Schmeckpeper would inherit some portion of the farm property on Koertje's death.

The trial court found that Koertje made no such assurances and that Koertje was not unjustly enriched when he exercised his possessory rights to the leasehold and new improvements by evicting Richard Schmeckpeper for nonpayment of rent. However, since Koertje admitted that he had agreed with Richard Schmeckpeper to regard a Behlen steel grain bin as personal property of the tenant, the judgment allowed the appellant to take possession of that grain bin. We affirm.

Richard Schmeckpeper married Georgia Gail Koertje, daughter of Arnold Koertje, on October 11, 1975. Shortly thereafter, the newlyweds moved onto the Koertje farm under the terms of a written 1-year lease. Arnold and Viola Koertje had recently vacated the farm after Arnold injured his back and was unable to perform heavy farmwork.

Richard Schmeckpeper had many ideas for farm improvements during his tenancy, some of which came to fruition. In 1976, his first year as tenant farmer, Richard asked his father-in-law to install an irrigation system. Koertje refused to put in a pivot due to the expense and unsuitable terrain. The next year Richard asked Koertje to sell him a couple of acres of the farm property to enable him to erect a hog confinement system. Again, Koertje refused. Instead, Schmeckpeper improved the two existing hog houses, refurbishing the walls of one and placing a concrete feed floor in the other.

A month or two after Richard Schmeckpeper moved onto the farm he decided he needed more grain storage. When he proposed construction of a 7,623-bushel Behlen steel grain bin,

his father-in-law tried to dissuade him from incurring such a debt in his first year of farming. There were already six wooden grain bins and a 2,100-bushel steel bin on the farm. Koertje informed Schmeckpeper that if he chose to install the grain bin it would be Schmeckpeper's personal property; Koertje would not pay any part of the purchase price or the property taxes. The steel grain bin was erected in 1977. The following year, when Schmeckpeper farmed additional rental property, he installed another steel grain bin under similar circumstances. The second bin had a capacity of 9,600 bushels.

Schmeckpeper also installed three hog waterers in the early part of his tenancy. There were two in place when he originally took possession of the leasehold. As the livestock population grew, demand for water also increased. Schmeckpeper was dissatisfied with the amount of water his well could pump. He wanted to be able to use six hog waterers at one time. Once again, Koertje told his son-in-law that if he wanted to make the improvement he would have to pay for it himself.

Schmeckpeper installed a new well system with a submersible pump, using some piping from the old well system. Unfortunately, the new well yielded water with a high nitrate and bacteria count, which led to a high mortality rate among the livestock. When the hogs developed an intestinal disease, Schmeckpeper decided that the only way to cure it was to "get out of business for at least . . . one year." It was at that point that Schmeckpeper proposed dairy farming as an alternative. In June 1980 Schmeckpeper informed his father-in-law of his intention. Koertje advised against the new undertaking, warning Schmeckpeper that he was not going to help him.

Sometime later, at a Sunday family dinner, Schmeckpeper told his father-in-law that he planned to convert the existing barn into a milking parlor. Koertje opposed the idea, stating that he would not "foot the bill." The inside of the old barn was gutted and rebuilt for dairy production. About a year later, Schmeckpeper decided his dairy cattle needed additional shelter, so he began construction of a freestall barn. Schmeckpeper had two or three conversations with Koertje concerning this final project. Koertje did not approve of the improvement and finally, after the construction was well

underway, agreed to pay only the property taxes on the new freestall barn.

Garron Schmeckpeper, on the other hand, was very supportive of the new improvements. He provided labor for construction of the freestall barn and guaranteed his son's debt incurred to finance the construction of the barn. Since Richard Schmeckpeper has been unable to make payment on that debt, the plaintiff has been making installments on his son's behalf.

The primary factual dispute in this case concerns alleged conversations between Richard Schmeckpeper and Arnold Koertje. Richard Schmeckpeper claims that throughout the period he was improving his landlord's farm he had discussions with Koertje regarding his insecure status as a year-to-year lessee who had invested substantial sums of money in the leasehold.

Schmeckpeper asked for a written agreement that Koertje would assume the debt on the improvements if Schmeckpeper lost his right of possession. Koertje allegedly responded that there was no reason to worry, since "the kids" would eventually inherit the farm anyway. Schmeckpeper interpreted Koertje's statement as including himself and Koertje's three daughters as heirs. Koertje denied that any such conversation took place. He was never asked for an agreement to assume his son-in-law's debts, and he never indicated that either Richard Schmeckpeper or his daughter Georgia Gail Schmeckpeper would inherit the farm.

A suit to prevent unjust enrichment is tried in equity, and our review of equitable actions is by trial de novo. Neb. Rev. Stat. § 25-1925 (Reissue 1985). In a trial de novo this court is to retry issues of fact and reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court, subject to the rule that where credible evidence on material issues is in conflict, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another. § 25-1925; *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 362 N.W.2d 27 (1985). Having done so, we affirm.

It is the general rule that improvements made while a party is

in possession of premises under a lease which does not grant the right of reimbursement are not reimbursable to him. *Lienemann v. Lienemann,* 201 Neb. 458, 268 N.W.2d 108 (1978); *Blomquist v. Board of Educational Lands & Funds,* 170 Neb. 741, 104 N.W.2d 264 (1960); *Smith v. Kober,* 108 Neb. 768, 189 N.W. 377 (1922). Further, improvements which become a part of the real estate may not be removed and do not become the property of the lessee unless such removal or ownership is provided for by agreement or statute. *Lienemann, supra; State v. Bardsley,* 185 Neb. 629, 177 N.W.2d 599 (1970).

We agree with the trial court that Koertje agreed that the two steel grain bins were to be the personal property of Richard Schmeckpeper. Thus, it was proper that they were offered for sale at an auction of Richard Schmeckpeper's personal property. Since the larger of the two grain bins was not sold at auction, the trial court properly ruled that it remained the personal property of Schmeckpeper and that he was entitled to possession of that grain bin. Finding no evidence of other agreements or statutes providing that other improvements made by Schmeckpeper were to remain the property of the tenant at the termination of the lease, we must consider the appellant's contention that the appellee must compensate Garron Schmeckpeper for the improvements, in order to prevent unjust enrichment.

In seeking compensation for the remaining improvements, the appellant relies primarily on dictum appearing in *Lienemann v. Lienemann, supra* at 463, 268 N.W.2d at 112:

> We acknowledge that in a particular case equitable principles might require us to make allowances for improvements made by a tenant during the term of his lease in contemplation of his status as a prospective heir when he does not inherit the property and is not compensated in a partition action, viz., the other heirs.

A brief summary of the facts in *Lienemann* is necessary to place that dictum in proper context. George and Frank Lienemann were tenant farmers of their father's land from March 1950 to March 2, 1963. George Lienemann lived on the farm from March 1950 to April 1976. On March 2, 1963, their father conveyed the property to Frank Lienemann as trustee for

the use and benefit of himself and his four brothers and a sister. George and Frank were to continue farming the land and were to receive three-fifths of the profits, with the remaining two-fifths going to their father while he lived, apparently, and to the trust after his death. George had placed $25,000 worth of improvements on the property while he and Frank were colessors from their father.

When one brother desired to sell his portion of the property, the remaining children filed a partition action. In the same action, George Lienemann sought compensation for his improvements. This court noted that the only evidence adduced that supported any right to compensation was George's testimony that his father consented to the improvements, stating: "Go ahead if you want to. It will all be yours, anyway, someday." *Lienemann, supra* at 462, 268 N.W.2d at 111.

In *Lienemann* we found that George Lienemann was not entitled to compensation for improvements, noting that the improvements were made primarily for the benefit of the occupant himself. "They were not made under any claim of compensation." *Id.* at 463, 268 N.W.2d at 112. Similarly, in the present case, it is undisputed that Koertje never agreed to compensate Richard Schmeckpeper for the improvements he made to the leasehold.

The *Lienemann* dictum implying that we might recognize a right to compensation for improvements where a prospective heir failed to inherit and was not compensated in a partition action has limited applicability. A prospective heir's improvement of property under a bona fide, but mistaken, claim of ownership could be grounds for compensation if the testator acquiesced in the improvement or engaged in inequitable or misleading conduct. Annot., 57 A.L.R.2d 263 (1958).

Richard Schmeckpeper had no bona fide claim of ownership. He had no agreement to purchase the farm, and, although his expectation that he would inherit the farm as one of Koertje's "kids" was conceivable as long as he was married to Koertje's daughter, it was merely optimistic in light of his recent divorce. In any event, Schmeckpeper testified that he requested an agreement that Koertje would assume liability on any

improvements Schmeckpeper would make. He clearly realized that he placed himself at financial risk by making the improvements without such an agreement, but he proceeded nevertheless. Schmeckpeper did not improve the leasehold under any mistaken claim of ownership.

In addition, Koertje did not mislead his son-in-law to believe that Koertje would pay for any portion of the improvements. Koertje tried to dissuade Schmeckpeper from incurring the debts and erecting the improvements. He only acquiesced in the construction of the milking parlor and freestall barn after construction was well underway. Koertje was not unjustly enriched when his son-in-law's tenancy was terminated.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.