280 Neb. 186
VITALIX, INC., APPELLANT,
v.
BOX BUTTE COUNTY BOARD OF EQUALIZATION, APPELLEE.
No. S-09-1074.
Supreme Court of Nebraska.
Filed July 9, 2010.
Gerard T. Forget III, of Forget Firm, P.C., L.L.O., for appellant.
No appearance for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

I. INTRODUCTION
The Box Butte County assessor set the valuation for improvements to property made by the appellant, Vitalix, Inc. Vitalix protested the valuation, arguing that the property was exempt from taxation because it was public land being used for a public purpose. The Box Butte County Board of Equalization affirmed the county assessor's valuation, essentially denying an exemption. Vitalix appealed that decision to the Tax Equalization and Review Commission (TERC), which affirmed the board of equalization's decision. Vitalix appeals to this court. We affirm.

II. FACTUAL BACKGROUND
Vitalix manufactures nutritional supplements for livestock. Its plant is located on a parcel of real property owned in fee simple by the City of Alliance, Nebraska (City). The operative lease was signed by the City and Vitalix on December 17, 2004. At that time, the lease provided for the lease of the real property along with three buildings, identified as buildings Nos. 3000, 3001, and 3101, located on the real property.
Subsequently, an addition was built connecting buildings Nos. 3000 and 3001 to form a U-shaped contiguous structure. The lease between the City and Vitalix was amended in June 2005 to provide for this addition (referred to as the "Warehouse Addition"). The Warehouse Addition was constructed using community redevelopment funds obtained from the State of Nebraska by the City.
In 2007, the county assessor assessed the Warehouse Addition and certain other improvements to Vitalix in the amount of $897,051. The Warehouse Addition had been assessed at $570,935; the other property was assessed at $326,116. Only improvements were assessed to Vitalix; the land was assessed at zero and is exempt from taxation as property owned by the City. In addition, buildings Nos. 3000 and 3001 are exempt from taxation and have been since an exemption was granted to the City by the board of equalization in May 2005.
The issue on appeal is whether the Warehouse Addition is exempt from taxation as public property used for a public purpose. Vitalix is not contesting the assessment of the other improvements to the parcel.

III. ASSIGNMENTS OF ERROR
On appeal, Vitalix assigns that TERC erred in (1) rejecting a stipulation of facts entered into by the parties and (2) denying an exemption from taxation for the Warehouse Addition.

IV. STANDARD OF REVIEW
[1-3] Appellate courts review decisions rendered by TERC for errors appearing on the record.[1] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2] Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record.[3]

V. ANALYSIS

1. PARTIES' STIPULATION
In its first assignment of error, Vitalix argues that TERC erred in rejecting the stipulation of facts entered into by the parties. At issue is the parties' stipulation stating that the parcel of land in question, "together with any appurtenant structure (`Warehouse Addition'), is owned in fee simple by the City . . . subject only to the leasehold interest of Vitalix." TERC notes that "[i]f only the land is described as the `Warehouse Addition' for purposes of the stipulation, the stipulation conforms to the evidence. If `Warehouse Addition' also refers to the warehouse constructed in 2004, it is contrary to the evidence."
[4] Because the ownership of the warehouse has bearing on whether it is exempt from taxation, TERC's concern with this stipulation is well founded. The above language"[the] parcel of land . . . together with any appurtenant structure (`Warehouse Addition'), is owned in fee simple by the City" suggests that the parties could be attempting to stipulate that the Warehouse Addition is owned by the City. Such is a legal conclusion and cannot be the subject of a stipulation between the parties.[4] We conclude that TERC did not err by refusing to consider the parties' stipulation. Vitalix's first assignment of error is without merit.

2. TERC'S DECISION
In its second assignment of error, Vitalix argues that TERC erred in affirming the decision of the board of equalization. Vitalix contends that Neb. Rev. Stat. § 77-202(1)(a) (Cum. Supp. 2006) provided an exemption for the Warehouse Addition. Section 77-202(1) provided in relevant part that "[t]he following property shall be exempt from property taxes:. . . [p]roperty of the state and its governmental subdivisions to the extent used or being developed for use by the state or governmental subdivision for a public purpose." Vitalix argues that upon its construction, the Warehouse Addition became a part of the real estate and thus was owned by the City and not by Vitalix. And because the land was used for a public purpose, namely because it was built upon using community redevelopment funds, it was exempt from taxation.

(a) Property of State or Governmental Subdivision
We turn first to TERC's finding that the Warehouse Addition was owned by Vitalix and thus not "[p]roperty of the state" or a governmental subdivision as required by § 77-202(1)(a).
The record in this case shows that the Warehouse Addition was included in a list of assets reported by Vitalix to the federal government for tax purposes. The lease between the City and Vitalix provided that "[w]ith prior permission of [the City, Vitalix] may make alterations or additions to the premises," but that "[i]n the absence of consent of [the City], all additions and alterations to the premises, including fixtures, made by [Vitalix] shall become property of [the City] upon termination of the lease." Finally, the lease provided that "[a]ny fixtures, equipment or supplies not removed from the premises by [Vitalix] upon termination of the lease shall become property of [the City]." Neither of these exceptions is relevant in this case, as the City granted consent for the Warehouse Addition and the lease has not yet been terminated.
An addendum to the same lease specifically notes that Vitalix, and not the City, had constructed, on the real property that is the subject of the lease, a warehouse building. The record also includes a deed of trust between Vitalix, the institutions which financed the project, and the City. Both the addendum and the deed indicate that Vitalix is responsible for the repayment of all funds.
Vitalix's primary argument is that as a general rule, when improvements are made to leased real estate, the improvements become a part of the real estate and are owned by the landowner, not the tenant. And this is indeed the general rule.[5] But the general rule does provide for the converse upon agreement of the parties. And this lease, as is noted above, makes such provision: Any improvements become the City's property only under certain circumstances not at issue here. More importantly, the addendum to the lease does not include any language suggesting otherwise.
Neb. Rev. Stat. § 77-1374 (Reissue 2003) also supported the general conclusion that improvements do not necessarily become part of the underlying real estate, at least for taxation purposes. That section provided in part that "[i]mprovements on leased public lands shall be assessed, together with the value of the lease, to the owner of the improvements as real property." Indeed, besides the Warehouse Addition, Vitalix has been assessed for other improvements to the leasehold interest in question, and it is not protesting that assessment.
The burden is on Vitalix[6] to show that the Warehouse Addition was "[p]roperty of the state."[7] Vitalix failed to meet that burden. We conclude that TERC's conclusion that Vitalix and not the City owned the Warehouse Addition despite the fact that the building was constructed on real property owned by the City conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

(b) Public Purpose
Vitalix also argues that the construction of the Warehouse Addition was for a public purpose under § 77-202(1)(a), which provided in part:
For purposes of this subdivision, public purpose means use of the property . . . to provide public services with or without cost to the recipient, including the general operation of government, public education, public safety, transportation, public works, civil and criminal justice, public health and welfare, developments by a public housing authority, parks, culture, recreation, community development, and cemetery purposes . . . .
Vitalix contends that because the Warehouse Addition was constructed as part of community redevelopment, it is for a public purpose. We disagree.
While community development was listed in § 77-202(1)(a), that section also noted that "public purpose means use of the property . . . to provide public services." Vitalix fails to show, and there is no other evidence to support the conclusion, that by operating its business, Vitalix is providing a public service. To the contrary, Vitalix is running a for-profit business manufacturing nutritional supplements for livestock. Simply purchasing the improvements with community redevelopment funds is insufficient to make the improvements be for a "public purpose." We therefore reject Vitalix's argument that the Warehouse Addition is being used for a "public purpose."
Vitalix's second assignment of error is without merit.
NOTES
[1] Fort Calhoun Bapt. Ch. v. Washington Cty. Bd. of Eq., 277 Neb. 25, 759 N.W.2d 475 (2009).
[2] Id.
[3] Id.
[4] See, e.g., Roberts v. Roberts, No. 08-740, 2009 WL 3785696 (Ark. Nov. 12, 2009); 73 Am. Jur. 2d Stipulations § 4 (2001). Cf. Mischke v. Mischke, 253 Neb. 439, 571 N.W.2d 248 (1997).
[5] See, Schmeckpeper v. Koertje, 222 Neb. 800, 388 N.W.2d 51 (1986); Lienemann v. Lienemann, 201 Neb. 458, 268 N.W.2d 108 (1978); State v. Bardsley, 185 Neb. 629, 177 N.W.2d 599 (1970), overruled in part on other grounds, State v. Rosenberger, 187 Neb. 726, 193 N.W.2d 769 (1972).
[6] See Neb. Rev. Stat. § 77-5016(8) (Reissue 2009).
[7] See § 77-202(1)(a).