Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/09/2021 08:09 AM CDT

State of Nebraska, appellee, v.
Marc J. Bartel, appellant.
___ N.W.2d ___

Filed January 15, 2021.    No. S-20-148.

1. **Motions for New Trial: Appeal and Error.** The standard of review for a trial court's denial of a motion for new trial after an evidentiary hearing is whether the trial court abused its discretion in denying the motion.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable, or when its action is clearly against justice, conscience, reason, or evidence.

3. **Criminal Law: Motions for New Trial: Statutes.** In Nebraska, limitations on the grounds and timing of a criminal defendant's motion for new trial are controlled by statute.

4. **Pleadings: Statutes: Time.** In order for a motion to have any effect, it must comply with statutory time limitations.

5. **Motions for New Trial: Statutes: Time: Appeal and Error.** An appellate court does not consider a motion for new trial to the extent that its grounds fail to conform to the statutory requirements of timeliness.

6. **Motions for New Trial: Time.** The time limitation for filing a motion for new trial runs from the date on which a verdict is rendered, not the date of sentencing.

7. **Motions for New Trial: Words and Phrases.** "Unavoidably prevented" refers to circumstances beyond the control of the party filing the motion for new trial.

8. **Attorney and Client.** The law requires diligence on the part of clients and their attorneys, and the mere neglect of either will not entitle a party to relief on that ground.

9. **Criminal Law: Motions for New Trial: Evidence: Proof.** Neb. Rev. Stat. § 29-2101(5) (Reissue 2016) imposes on defendants a two-prong burden of proof: First, a criminal defendant must show that the

evidence at issue has been newly discovered since trial, meaning that the evidence could not, with reasonable diligence, have been discovered and produced at trial. Second, the defendant also must show that the evidence at issue is so substantial that with it, a different verdict would probably have been reached at trial.

10. **Words and Phrases.** Whereas an object is new at the moment that it begins to exist, it is newly discovered once it is revealed or found out to have previously been in existence.

11. **Trial: Evidence: Words and Phrases.** Evidence is newly discovered if it existed at the time of trial but has been uncovered since the trial.

12. **New Trial: Evidence.** Evidence newly created after trial does not satisfy Neb. Rev. Stat. § 29-2101(5) (Reissue 2016).

13. \_\_\_\_: \_\_\_\_. Evidence of facts happening after trial ordinarily cannot be considered as newly discovered evidence on which to justify the granting of a new trial.

14. \_\_\_\_: \_\_\_\_. A new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but, rather, the result of changed conditions since.

15. **New Trial: Evidence: Verdicts.** In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial.

16. **New Trial: Evidence: Witnesses.** To warrant a new trial, newly discovered evidence must involve something other than the credibility of the witness who testified at trial.

17. **Divorce.** Domestic relations cases are civil cases, litigated between individuals.

18. \_\_\_\_. Domestic relations litigation often involves considerable negotiation between parties about the terms of divorce.

19. \_\_\_\_. Assuming the parties' negotiation in a domestic relations case was conducted fairly and reasonably, courts give considerable weight to the terms agreed upon by the parties.

20. **Motions to Dismiss: Motions to Vacate.** A nonparty to a case has no authority to ask the court to dismiss or vacate it.

21. **Stipulations.** A legal conclusion is not the proper subject of a stipulation.

22. **Words and Phrases.** Void ab initio means null from the beginning.

23. **Judgments: Words and Phrases.** An order is void ab initio, rather than merely voidable, if the character of the judgment was not such as the court had the power to render or because the mode of procedure employed by the court was such as it might not lawfully adopt.

24. **Fraud: Proof.** The standard for showing fraud is high.

Appeal from the District Court for Douglas County, Marlon A. Polk, Judge, on appeal thereto from the County Court for Douglas County, Darryl R. Lowe, Judge. Judgment of District Court affirmed.

Michael J. Wilson, of Berry Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

In October 2016, a jury found Marc J. Bartel guilty of violating a domestic abuse protection order. Bartel filed a motion for new trial based on a stipulated order, entered in June 2017 in his separate domestic case, that purported to render the original protection order "void ab initio."

The county court denied Bartel's motion, and the district court found no abuse of discretion. We affirm.

## II. FACTS

### 1. Domestic Abuse Protection Order

In 2015, Bartel and his then-wife, M.B., were experiencing marital problems. Pursuant to Neb. Rev. Stat. § 42-924 (Reissue 2016), M.B. petitioned for a domestic abuse protection order against Bartel. On September 16, after hearing oral arguments and receiving evidence, the district court for Douglas County made a finding that "a credible threat was made [by Bartel] that would put [M.B.] in fear of bodily injury." Based on these findings, the district court issued a protection order, effective for "one year from the date of" the order, "unless modified by order of the court."

Under the protection order, Bartel was "enjoined and prohibited from imposing any restraint upon the person or liberty of [M.B.]"; "enjoined and prohibited from threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of [M.B.]"; "enjoined and prohibited from telephoning, contacting, or otherwise communicating with [M.B.]"; and "ordered to stay away from" M.B.'s home and work addresses.

Within the protection order, the district court also made specific allowances for Bartel to continue visitations with his two daughters at least 1 day every week. The district court ordered: "The children will be exchanged at [a church near M.B.'s house]. [Bartel is] to remain in vehicle except to assist children from car seats." Despite his general prohibition against having any contact with M.B., Bartel was permitted "to notify her by text message that he [is] unable to pick up [the] children" for visitation.

At the September 16, 2015, hearing on M.B.'s petition for a protection order, the district court specifically asked Bartel whether he understood that "violation of this order is an arrestable offense." Bartel responded, "Yes."

## 2. CONVICTION FOR VIOLATION OF PROTECTION ORDER

Saturday, October 31, 2015, was scheduled to be a regular visitation day between Bartel and his daughters. Prior to picking up the girls that morning, Bartel texted M.B. and asked if she would agree to let him pick up their daughters 30 minutes earlier than usual. Bartel wished to take the daughters with him to a funeral in a town an hour away.

M.B. agreed, but asked that on this day only Bartel park on the street in front of her house to pick up the girls. M.B. testified that because the pickup time was earlier than usual, she believed it would be easier to ready the girls for their day if she did not need to drive them to the court's ordered site of dropoff at the church.

Just after the agreed-upon time, Bartel arrived in front of M.B.'s home. He texted M.B. that he was there and remained in his car. The girls emerged from the house, and Bartel exited his car to help load them into car seats.

Bartel became angry because he believed that his daughters appeared "disheveled." He had purchased dresses and tights for them to wear to the funeral, but they were wearing casual shirts and leggings instead. M.B. testified that she had dressed the girls in leggings to make them comfortable during the drive and that their dresses were packed in a sack carried by one of the girls. Taking the girls' sack and ordering the girls back inside the house to change, Bartel marched behind them, toward M.B.'s front door.

M.B., still standing on her front stoop, became concerned when she observed Bartel striding toward her house "like a freight train." M.B. reminded Bartel that he was prohibited by the protection order from approaching her house. He responded that he was coming in to have the girls change their clothes. Alarmed, M.B. ushered her daughters inside the house and slammed the front door shut, locking it with a deadbolt.

M.B. and Bartel each called the police. M.B. testified at trial that she had been afraid for her life and that until the police arrived several minutes later, she held a baseball bat for protection. M.B.'s mother, who was visiting from out of state, gathered the girls in a back bedroom to keep them away from the altercation.

Bartel continuously knocked at M.B.'s front door for several minutes, cursing. He then returned to his car and began pacing alongside it until police arrived.

Two Omaha police officers arrived on the scene. They separately spoke with M.B. and Bartel. One of the officers then searched police records and discovered the protection order requiring Bartel to stay away from M.B.'s home address. The officers arrested Bartel for violation of the protection order and took him into police custody.

On October 7, 2016, at a trial in the county court for Douglas County, M.B. testified as a witness against Bartel. She averred that the protection order had been in effect and that Bartel had violated it on October 31, 2015. A jury convicted Bartel of having knowingly violated the protection order, a Class I misdemeanor.[1] The county court later sentenced Bartel to 12 months' probation, a $250 fine, and a suspended sentence of 2 days in jail.

### 3. Motion for New Trial

In June 2017, while his direct appeal was still pending, Bartel moved to dismiss the appeal and filed a motion for new trial.[2] He requested that the county court vacate his conviction because of an order entered in another case.

In M.B. and Bartel's separate domestic relations case, on June 5, 2017, the district court for Douglas County entered an order holding that its "September 16, 2015[,] Protection Order shall be deemed *void ab initio*, and shall be considered void from the date of entry of this Order." The order stated that "the parties acknowledge and specifically intend and anticipate that this Order will vacate or void [Bartel's] conviction of violating the Protection Order." At that time, M.B. also agreed not to object if Bartel moved for new trial in county court after his conviction for violation of the protection order.

In January 2018, at the county court's hearing on Bartel's motion for new trial, Bartel offered the June 2017 order and asserted that it was newly discovered evidence relevant to his defense at trial. He also alleged that M.B.'s stipulation to the district court not to object to a motion for new trial implied that she had perpetrated a fraud against the county court by testifying for the State at trial. Finally, Bartel contended that because his conviction was premised on a protection order that was now void ab initio, his conviction was an error of law.

---

[1] See § 42-924(4).

[2] See Neb. Rev. Stat. § 29-2103 (Reissue 2016).

The county court orally issued an order denying Bartel's motion for new trial. Sitting as an intermediate appellate court,[3] the district court for Douglas County affirmed, reasoning that the June 2017 order in the domestic relations case reflected the parties' negotiations after trial based on then-existing circumstances and was not newly discovered evidence relevant to Bartel's criminal trial. The district court further found no error in the jury's conviction or the county court's sentence and denied Bartel's motion for new trial.

Bartel filed a timely notice of appeal, and we moved the appeal to our docket.[4]

### III. ASSIGNMENT OF ERROR

On appeal, Bartel assigns only one error: that it was error for the district court to uphold the county court's denial of Bartel's motion for new trial in the 2016 criminal case, considering the stipulated June 2017 order in his domestic relations case.

### IV. STANDARD OF REVIEW

[1,2] The standard of review for a trial court's denial of a motion for new trial after an evidentiary hearing is whether the trial court abused its discretion in denying the motion.[5] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable, or when its action is clearly against justice, conscience, reason, or evidence.[6]

### V. ANALYSIS

More than 8 months after he was convicted in 2016 of violating a domestic abuse protection order, Bartel filed a

---

[3] See Neb. Rev. Stat. § 25-2733 (Reissue 2016).

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[5] See *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

[6] See *id.*

motion for new trial based on the June 2017 order, which purported to render the protection order void ab initio. Bartel alleged that the stipulated order had effectively turned back the clock 8 months to nullify the protection order and, with it, the conviction.

Viewing that passage of time differently in the light of our statutes, the State argues that Bartel's grounds for new trial are both too little and too late to warrant a new trial following Bartel's conviction. We agree.

[3] In Nebraska, limitations on the grounds and timing of a criminal defendant's motion for new trial are controlled by statute.[7] The grounds on which a trial court may order a new trial after a criminal conviction has been entered are specified in Neb. Rev. Stat. § 29-2101 (Reissue 2016).[8]

Bartel, in support of his motion for new trial before the county court, offered the June 2017 order from his domestic relations case and cited each of three grounds listed within § 29-2101. He argued first that a new trial was warranted under § 29-2101(1) because M.B.'s stipulation to the June 2017 order implied that she had perpetrated a fraud against the district court and county court during her prior testimony. Second, Bartel contended that because his conviction was premised on a protection order that was now void ab initio according to the June 2017 order, his conviction was an error of law under § 29-2101(4). Third, Bartel alleged that under § 29-2101(5), the June 2017 order was newly discovered evidence that would have been relevant to his defense at trial.

The county court denied Bartel's motion for new trial, and the district court affirmed. Bartel assigns that the district court's affirmance was in error because the county court had abused its discretion in denying his motion for new trial. We find no such abuse of discretion and affirm the decision of

---

[7] See *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018).

[8] See *id.*

the district court below to uphold the county court's denial of Bartel's motion for new trial.

### 1. Timeliness of Bartel's Motion for New Trial

[4,5] We begin by considering whether Bartel's motion for new trial was timely. In order for a motion to have any effect, it must comply with statutory time limitations.[9] An appellate court does not consider a motion for new trial to the extent that its grounds fail to conform to the statutory requirements of timeliness.[10] The time limitations for motions for new trial are set forth in § 29-2103.[11]

### (a) 10-Day Limit

[6] The time limitation for filing a motion for new trial runs from the date on which a verdict is rendered, not the date of sentencing.[12] Thus, under § 29-2103(3), for Bartel's arguments for a new trial based on § 29-2101(1) and (4) to have any effect, they needed to be filed within 10 days after the jury rendered its verdict in his criminal case on October 7, 2016. Yet Bartel did not file a motion for new trial until June 23, 2017, more than 8 months after the jury's verdict.

[7,8] Further, Bartel has failed to allege, nor does the record show, that timely filing was somehow unavoidably prevented for 8 months. "'[U]navoidably prevented' as used in § 29-2103(3) refers to circumstances beyond the control of the party filing the motion for new trial."[13] The law requires diligence on the part of clients and their attorneys, and the mere neglect of either will not entitle a party to relief on that

---

[9] See *id.*

[10] See *id.*

[11] *Id.*

[12] See *id.* See, also, *State v. Lacy*, 195 Neb. 299, 237 N.W.2d 650 (1976).

[13] *Avina-Murillo, supra* note 7, 301 Neb. at 195, 917 N.W.2d at 873.

ground.[14] Because Bartel's motion for new trial was untimely without justification, it was ineffective insofar as it rested on the first two grounds alleged under § 29-2101(1) and (4). We thus do not consider those grounds in our analysis below.

### (b) Within Reasonable Time After Discovery

Bartel's third ground for new trial was that under § 29-2101(5), he had newly discovered evidence that would have been relevant to his defense at trial. Like the first two grounds for a new trial alleged by Bartel, this ground was also filed 8 months after the jury rendered a guilty verdict in Bartel's criminal case. But under § 29-2103(4), a motion based on newly discovered evidence is timely so long as it was filed within a reasonable time, generally not to exceed 5 years, after discovery of that new evidence.[15]

Because we conclude below that the evidence at issue was not newly discovered, we need not determine here whether Bartel's motion, based on the ground specified in § 29-2101(5), was timely filed.

### 2. Merit of Bartel's Motion for New Trial Based on Newly Discovered Evidence

Bartel assigns that the district court erred in upholding the county court's denial of his motion for new trial under § 29-2101(5). Under that statute, a criminal defendant may be granted a new trial if his or her substantial rights were materially affected by "newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial."[16]

---

[14] *Id.*

[15] See *State v. Cross*, 297 Neb. 154, 900 N.W.2d 1 (2017).

[16] See § 29-2101(5). See, also, Neb. Rev. Stat. § 29-2102(3) (Reissue 2016).

[9] In our opinions interpreting § 29-2101(5), we have found it to impose on defendants a two-prong burden of proof: First, a criminal defendant must show that the evidence at issue has been newly discovered since trial, meaning that the evidence could not, with reasonable diligence, have been discovered and produced at trial.[17] Second, the defendant also must show that the evidence at issue is so substantial that with it, a different verdict would probably have been reached at trial.[18]

We turn to the first prong. Bartel contends that the evidence at issue—the June 2017 order in his domestic relations case— was newly discovered evidence. He claims that because the order was not entered until 8 months after the jury announced a guilty verdict following his county court trial, he could not possibly have discovered it and produced it at trial, no matter how much diligence he would have exercised.

The State responds that our decision in *State v. Jackson*[19] counsels against Bartel's position. In *Jackson*, we contrasted newly discovered evidence with newly available evidence. The issue was whether the testimony of a codefendant who had refused to testify at the defendant's criminal trial but then promised after trial to provide exculpatory testimony warranted a new trial. We held that it did not because there was nothing about the codefendant's exculpatory testimony that had been newly discovered since trial. What had changed since trial were the codefendant's circumstances and corresponding willingness to testify. Such testimony was thus not newly discovered, but "newly available evidence which does not provide a basis for the granting of a new trial."[20]

---

[17] See *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020).

[18] *Id.*

[19] *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

[20] *Id.* at 433, 648 N.W.2d at 293 (emphasis omitted).

Unlike in *Jackson*, the evidence at issue here, the June 2017 order, did not exist at the time of Bartel's trial and conviction. It had not yet been created. After Bartel's trial in county court, the district court's 2017 order did not become newly available; it was altogether new. But new is not the same as "newly discovered" for purposes of § 29-2101(5).

[10-12] Whereas an object is new at the moment that it begins to exist, it is newly discovered once it is "revealed" or "found out" to have previously been in existence.[21] We have held before that evidence is newly discovered if it existed at the time of trial but has been "uncovered since the trial."[22] Implicit in that holding is that evidence must have existed at trial for it to be uncovered after the trial. Evidence newly created after trial does not satisfy § 29-2101(5).

[13-15] This was also our interpretation in a closely analogous context. The Nebraska civil procedure rules similarly allow for a new trial to be granted based on "newly discovered evidence."[23] As we have clarified about § 25-1142, however:

"'[E]vidence of facts happening after trial ordinarily cannot be considered as newly discovered evidence on which to justify the granting of a new trial.' [Citation omitted.] 'A new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but rather the result of changed conditions since.' [Citation omitted.] 'In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside

---

[21] Compare "New," Oxford English Dictionary Online, http://oed.com/view/Entry/126504 (last visited Jan. 9, 2021), with "Discovered," Oxford English Dictionary Online, http://oed.com/view/Entry/54010 (last visited Jan. 9, 2021).

[22] See *Jackson, supra* note 19, 264 Neb. at 432, 648 N.W.2d at 293.

[23] See Neb. Rev. Stat. § 25-1142(7) (Reissue 2016).

and a new trial granted on the basis of evidence of facts occurring subsequent to such trial.' . . ."[24]

We note that motions for new trial are reviewed against different standards depending on whether they follow a civil or a criminal trial.[25] Still, we find the above language instructive here, given the similarity of language between the statutory grounds for a new trial based on newly discovered evidence in the civil and criminal contexts.[26]

### (a) June 2017 Order in Domestic Relations Case

In support of his motion for new trial, Bartel relied on a June 2017 order from the district court entered in his domestic relations case more than 8 months after the criminal trial. In that order, the district court noted that both M.B. and Bartel had stipulated that the 2015 protection order should be rendered "void as of the date of entry."

According to the June 2017 order, M.B. understood that "it [was] anticipated that [Bartel's] conviction [would] be dismissed and/or vacated with prejudice." Further, the June 2017 order stated that M.B. had agreed not to object if Bartel filed a motion for new trial in his criminal case. The June 2017 order then asserted that "the . . . 2015 Protection Order shall be deemed *void ab initio*, and shall be considered void from the date of entry of this Order."

We find nothing on the face of this June 2017 order that would make it newly discovered evidence under § 29-2101(5) concerning facts that existed at Bartel's criminal trial. To

---

[24] *State ex rel. Douglas v. Bible Baptist Church*, 218 Neb. 307, 309, 353 N.W.2d 20, 22 (1984) (quoting *Wagner v. Loup River Public Power District*, 150 Neb. 7, 33 N.W.2d 300 (1948)). Accord *In Interest of S.H., L.H., and A.H.*, 225 Neb. 452, 406 N.W.2d 112 (1987).

[25] See *Hubbard v. State*, 72 Neb. 62, 100 N.W. 153 (1904). See, also, e.g., *State v. Torrence*, 192 Neb. 720, 224 N.W.2d 177 (1974), *disapproved on other grounds, State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991).

[26] Compare § 25-1142(7), with § 29-2101(5).

the contrary, the order did not exist until 8 months after trial. At that point, it was newly created by the district court, pursuant at least in part to M.B.'s and Bartel's stipulation made after the county court's trial.

At oral argument, Bartel conceded that the June 2017 order itself did not exist until after his criminal trial. Yet he contended that the order still had legal effect upon the facts that existed at trial and, thus, that the order was newly discovered evidence under § 29-2101(5). According to Bartel, the order implied that M.B. had fraudulently testified to the district court in support of the protection order and to the county court in support of a conviction. Next, Bartel asserted that the June 2017 order rendered his protection order retroactively ineffective prior to trial. We disagree.

### (b) M.B.'s Testimony

[16] As an initial matter, testimony recanted after trial is notoriously unreliable.[27] We have thus long held that to warrant a new trial, newly discovered evidence must involve something other than the credibility of the witness who testified at trial.[28] Even if M.B.'s stipulation to the June 2017 order did cast doubt on her credibility by undermining her prior testimony, that would not warrant a new trial under § 29-2101(5).

[17-19] Moreover, Bartel has failed to show that M.B.'s stipulation actually undermined her prior testimony. Domestic relations cases are civil cases, litigated between individuals.[29] Such litigation often involves considerable negotiation between parties about the terms of divorce.[30] Assuming the parties' negotiation was conducted fairly and reasonably,

---

[27] See *State v. Lotter*, 278 Neb. 466, 771 N.W.2d 551 (2009). See, also, *Jackson, supra* note 19.

[28] See *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

[29] See *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017).

[30] See, e.g., *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

courts generally give considerable weight to the terms agreed upon by the parties.[31]

[20,21] That appears to have happened here. Over the course of negotiations in M.B. and Bartel's domestic relations case, it appears M.B. accepted that Bartel's criminal conviction might be dismissed or vacated. Because she was not the party prosecuting Bartel's criminal case, M.B. had no authority, even if she had been so inclined, to herself ask the county court to dismiss or vacate it.[32] Instead, in the domestic relations case to which she was a party, M.B. stipulated that she understood that the county court's criminal case might be dismissed or vacated. We note that to the extent M.B. characterized the protection order as void ab initio, that characterization was a legal conclusion and thus not the proper subject of a stipulation.[33] The district court documented M.B.'s stipulation, as proposed, in its 2017 order.

Absent from the June 2017 order, however, is evidence that M.B. was recanting her prior testimony. She did not assert that her testimony to the county court or district court had been false or misconstrued. The district court made no findings that M.B.'s prior statements were untrue or fraudulent.

Bartel asserts that M.B.'s stipulation "amounts to an admission by [M.B.] that she misled the jury when she testified that the protection orders were based on valid concerns and that she 'fe[lt] the need to seek a domestic abuse protection order' against Bartel."[34] But M.B. did not stipulate to having misled the jury about her fear of Bartel that prompted the protection order. Instead, her stipulation appears to reflect her view of the facts that occurred after Bartel's criminal trial and over

---

[31] See *id.*

[32] See *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 941 N.W.2d 158 (2020).

[33] See *Vitalix, Inc. v. Box Butte Cty. Bd. of Equal.*, 280 Neb. 186, 786 N.W.2d 326 (2010).

[34] Brief for appellant at 14.

the course of negotiations in the domestic relations case. It might well have been true that in 2017, M.B. was no longer as afraid of Bartel as she had been when she sought the protection order in 2015. Still, that would not change the facts that existed in 2015 and at trial. We find no evidence that M.B. explicitly refuted or undermined her prior testimony.

That M.B. stipulated to the June 2017 order is not newly discovered evidence under § 29-2101(5). We reject Bartel's argument to the contrary.

### (c) Void ab Initio

[22,23] We also find no basis for Bartel's argument that the June 2017 order rendered his protection order retroactively ineffective at the time of trial. Void ab initio, the term used in the June 2017 order, means "[n]ull from the beginning."[35] As courts in other jurisdictions have stated, "[a]n order is void ab initio, rather than merely voidable, if 'the character of the judgment was not such as the court had the power to render, or because the mode of procedure employed by the court was such as it might not lawfully adopt.'"[36]

Similarly to those other jurisdictions, we have applied the doctrine of void ab initio sparingly, such as when a court's order was entered without personal or subject matter jurisdiction[37] or absent proper procedures.[38] Here, Bartel provides no reasoning, nor do we find, that the district court in 2015

---

[35] Black's Law Dictionary 1885 (11th ed. 2019). See, also, *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019).

[36] *Collins v. Shepherd*, 274 Va. 390, 402, 649 S.E.2d 672, 678 (2007). See, also, *Reid v. Indep. Union of All Workers*, 200 Minn. 599, 275 N.W. 300 (1937); *Hampshire v. Woolley*, 72 Utah 106, 269 P. 135 (1928), *overruled in part on other grounds, In re Rice's Estate*, 111 Utah 428, 182 P.2d 111 (1947); 56 Am. Jur. 2d *Motions, Rules, and Orders* § 47 (2020).

[37] See, e.g., *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997).

[38] See, e.g., *Big John's Billiards v. Balka*, 254 Neb. 528, 577 N.W.2d 294 (1998).

lacked jurisdiction or failed to follow proper procedures when it entered the protection order.

Bartel instead claims that the district court's authority to render its protection order void ab initio came from Neb. Rev. Stat. § 25-2001(4) (Reissue 2016). Under that statute, "[a] district court may vacate or modify its own judgments or orders after the term at which such judgments or orders were made . . . for fraud practiced by the successful party in obtaining the judgment or order."[39] According to Bartel, the district court in 2017 had authority under § 25-2001(4) to render its protection order void ab initio because "the protection order was obtained by [M.B.'s] fraud," practiced in her petition to the district court to procure a protection order.[40]

But even assuming, arguendo, that § 25-2001 would authorize a district court to go back in time to nullify its protection order in the way that Bartel suggests, we find that the statutory requirements for such action were not met here. First, a district court's authority under the law to vacate an order after the term in which the order was made may be invoked only by "a motion filed within six months after the entry of the judgment or order."[41] Because the district court entered the protection order on September 16, 2015, the district court's term ended at the end of 2015.[42]

Yet after the district court entered the protection order, it was not until almost 15 months later, on January 4, 2017, that Bartel filed a motion seeking to vacate the protection order pursuant to the district court's authority under § 25-2001. On May 26, 2017, Bartel again filed a motion to invoke the district court's authority under § 25-2001. Neither motion was filed within the 6 months required under § 25-2001(1).

---

[39] § 25-2001.

[40] Brief for appellant at 17.

[41] § 25-2001(1).

[42] See *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

We note that before its expiration, the protection order appears to have been timely withdrawn pursuant to M.B.'s motion filed on December 17, 2015. However, that withdrawal did not invoke the district court's authority under § 25-2001. The district court's "Order of Dismissal" entered on January 6, 2016, did not find that the protection order should never have existed, nor that the protection order was vacated pursuant to the district court's § 25-2001 authority. Instead, it appears that the district court withdrew the protection order from having future effect pursuant to § 42-924. But because no motion to vacate the protection order pursuant to § 25-2001 was filed within 6 months after the protection order's issuance, we find no authority under § 25-2001(4) for the district court to have vacated the protection order with retroactive effect.

[24] Second, even if a motion had been filed within 6 months, we question whether the district court would have had a lawful basis for exercising its authority to vacate the protection order under § 25-2001(4). The standard for showing fraud under that statute is high.[43] And, as analyzed above, the June 2017 order does not definitively state that M.B. wished to recant her prior testimony. Bartel does not identify even a single fact from M.B.'s prior testimony that she explicitly refuted or undermined. The district court made no findings of fraud, nor do we find evidence of fraud in the record. Without statutory authority, the June 2017 order could have had no legal effect upon the protection order entered in September 2015.

At most, then, the district court's use of the term "void ab initio" in the June 2017 order was a finding of fact about a term that M.B. and Bartel had negotiated in their domestic relations case. But that term could itself have no legal effect.[44]

---

[43] See *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014).

[44] See *Vitalix, Inc., supra* note 33.

And, for purposes of the county court's trial, it was not newly discovered evidence under § 29-2101(5).

The district court did not err in upholding the county court's denial of Bartel's motion for new trial. Bartel's assignment of error is without merit.

## VI. CONCLUSION

Bartel was convicted by a jury in county court of violating a protection order. We find no merit to Bartel's contention that the subsequent June 2017 order in his domestic relations case was newly discovered evidence sufficient to warrant a new trial in the criminal case. Finding no abuse of discretion, we affirm the decision of the district court upholding the county court's denial of Bartel's motion for new trial.

Affirmed.