Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/14/2022 08:10 AM CST

State of Nebraska, appellee and cross-appellant,
v. Rolander L. Brown, appellant
and cross-appellee.

___ N.W.2d ___

Filed October 22, 2021.    No. S-21-112.

1. **Motions for New Trial: Appeal and Error.** The standard of review for a trial court's denial of a motion for new trial after an evidentiary hearing is whether the trial court abused its discretion in denying the motion.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable, or when its action is clearly against justice, conscience, reason, or evidence.

3. **Criminal Law: Motions for New Trial: Evidence: Proof.** Neb. Rev. Stat. § 29-2101(5) (Reissue 2016) imposes on defendants a two-prong burden of proof: First, a criminal defendant must show that the evidence at issue has been newly discovered since trial, meaning that the evidence could not, with reasonable diligence, have been discovered and produced at trial; second, the defendant also must show that the evidence at issue is so substantial that with it, a different verdict would probably have been reached at trial.

4. **Trial: Evidence: Words and Phrases.** Evidence is newly discovered if it existed at the time of trial but has since been uncovered.

5. **Motions for New Trial: Evidence.** When alleged newly discovered evidence is found to lack credibility, it cannot be said that it would have produced a substantial difference in the result had it been offered and admitted at trial.

6. **Witnesses: Appeal and Error.** Appellate courts do not pass on the credibility of witnesses.

7. ____: ____. Witness credibility is a matter for the finder of fact and is not to be reassessed on appellate review.

8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FREUDENBERG, J.

## INTRODUCTION

After convictions of second degree murder, use of a firearm to commit a felony, and possession of a firearm by a prohibited person with sentences totaling 100 to 140 years' imprisonment were upheld on direct appeal, the defendant filed a motion for new trial based on newly discovered evidence. After an evidentiary hearing, the district court denied this motion for new trial. The defendant now appeals.

## BACKGROUND

Following a jury trial, Rolander L. Brown was convicted of second degree murder, use of a firearm to commit a felony, and possession of a firearm by a prohibited person. Brown was sentenced to a total of 100 to 140 years' imprisonment. Brown's convictions arose from the shooting of Carlos Alonzo on May 28, 2016. On direct appeal, this court affirmed Brown's convictions and sentences.[1] Now Brown appeals the district court's overruling of his motion for new trial.

---

[1] *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019).

EVIDENCE AT TRIAL

A full recitation of the facts of this case can be found in our opinion regarding Brown's direct appeal, and we highlight only those facts most relevant to the current appeal. In the early morning hours of May 28, 2016, Alonzo was found dead in the front yard of the residence of Doloma Curtis. Both Alonzo and Brown were romantically involved with Curtis at the time.

Surveillance video from a nearby convenience store showed a sedan, which appeared to be missing the hubcap on its front passenger-side tire, back into a parking space near the building at 2:21 a.m. A male exited the car at 2:22 a.m. and walked toward Curtis' residence, then ran back from that direction a few minutes later and drove out of the parking lot. Shortly after the male is seen walking toward Curtis' front door, at 2:23 a.m., the front door of the residence opened. At 2:23 a.m., the male runs out of Curtis' yard and back to his vehicle. At 2:24 a.m., the door to Curtis' residence is opened and someone exits.

At approximately 2:24 a.m., Omaha's "ShotSpotter" location system detected a single gunshot in the vicinity of Curtis' home. Law enforcement arrived at Curtis' residence at 2:27 a.m. Upon arrival, officers found Alonzo lying on his back on the sidewalk with a single gunshot wound to the head. Evidence indicated that Brown had access to and drove a sedan that did not have a hubcap on its front passenger-side tire.

During the investigation, officers determined that Brown's phone number was the last number that called the cell phone found in Curtis' bedroom. Officers obtained cell phone records from the cell phone provider for Brown's phone number. These records were sent to the FBI and used to track the movement of that cell phone on the night of the homicide. These locations indicated that Brown's cell phone was near the location of the homicide at approximately the time the shooting occurred.

Parris Stamps, a friend of Brown, testified at trial that Brown arrived at the house he lived in with James Nelson in the early morning hours of May 28, 2016. Stamps testified

Brown told him and Nelson that he had just come from Curtis'
house, that he had been in an altercation with Alonzo, and that
he "had to put [Alonzo] down." Stamps testified that Brown
then pulled out a black Smith & Wesson .40-caliber handgun
and removed the clip, which was missing one bullet. Brown's
cell phone records corroborated some elements of Stamps' tes-
timony, because the records showed that Brown called Nelson
at 2:25 and 2:26 a.m. and the cell site location information
showed that Brown was in the area of Nelson's residence at
approximately 2:34 a.m.

### Brown's Motion for New Trial

On October 6, 2020, Brown filed a motion for new trial
based on newly discovered evidence pursuant to Neb. Rev.
Stat. § 29-2101(5) (Reissue 2016). The State filed a motion
to dismiss the motion for new trial without further hearing.
Without explicitly ruling on the motion, the district court con-
ducted a hearing as contemplated by Neb. Rev. Stat. § 29-2102
(Reissue 2016). Under § 29-2102(2), the court shall grant a
hearing on the motion and determine the issues and make
findings of fact and conclusions of law if the motion for new
trial and supporting documents set forth facts which, if true,
would materially affect the substantial rights of the defendant.
If, on the other hand, the motion for new trial and supporting
documents fail to set forth sufficient facts, under § 29-2102(2),
"the court may, on its own motion, dismiss the motion without
a hearing."

The motion alleged and the evidence at the hearing estab-
lished that Curtis had been endorsed by the State as a witness
to be called at trial and had been interviewed by both law
enforcement and counsel for the defense. In each instance, she
relayed a similar story that she was in the bathroom and heard
Alonzo go outside to investigate some noise heard outside the
residence. She then heard a gunshot, went out the front door,
and observed Alonzo on the ground suffering from a gunshot
wound to the head. She then called the 911 emergency dis-
patch service.

The motion further alleged, and the evidence at the hearing further established, that Curtis was arrested for accessory to murder and later signed an agreement to participate in a proffer interview, but when a proffer agreement was made where Curtis would agree to testify truthfully for the State at Brown's trial and in return her charges would be reduced to a Class I misdemeanor, Curtis rejected the agreement. Brown's trial was set to commence on July 10, 2017, and Curtis failed to appear pursuant to her subpoena. Brown's trial commenced on July 12, and Curtis was apprehended in Pottawattamie County, Iowa, on July 19. The jury returned Brown's guilty verdicts on July 25, and Curtis never testified at Brown's trial.

Curtis entered a guilty plea to accessory to a felony and was sentenced to 3 to 5 years' imprisonment. After her release, in the early summer of 2020, Curtis contacted the Douglas County public defender's office indicating she had information regarding the homicide of Alonzo that had not been previously disclosed.

Curtis executed a sworn affidavit, attached as an exhibit to the motion, in which Curtis stated that on the night of the homicide, after hearing the shot, she exited her residence and observed her brother, LeRoy Long, standing next to Alonzo's body, and when she asked what happened, Long replied, "'Fuck that Nigger.'" Curtis stated that after she reentered her house and came back outside, she saw Brown standing in her yard, and when she asked Brown for help, he responded, "'Baby I can't,'" and ran away.

Curtis was the only one called to testify at the hearing. She testified consistently with what she stated in the affidavit. Curtis testified that she was in the process of a divorce in May 2016 and had at that time been romantically involved with Alonzo for a little over a year and with Brown for a few months. She testified that Alonzo was not aware she was seeing Brown, but that Brown knew of Alonzo. Curtis testified that on the night of Alonzo's death, she was in the bathroom

and Alonzo was upstairs when she heard her dogs barking. She heard Alonzo run downstairs and answer the door.

She testified that when she got done in the bathroom, she went out the front door to sit on the porch and saw Alonzo lying on the ground in blood. Curtis testified that she saw her brother, Long, standing in the front yard by the gate with a handgun. She testified that she asked Long what happened and that Long replied, "'Fuck that nigga.'" She testified that she reached into Alonzo's pocket to get his cell phone to call 911 and did not see where Long went. Curtis testified that after she got the cell phone out of Alonzo's pocket, she turned around and saw Brown standing near the driveway. She testified that she screamed at him for help and that Brown looked at her, shook his head, told her he could not get involved, and ran away.

Curtis testified that she had told law enforcement she did not know who shot Alonzo, because she was afraid for Long and she had faith in the system that Brown would not be convicted. She testified that she was arrested for accessory to homicide on July 26, 2016, before Brown was arrested, and eventually went to prison from February 2017 until September 2018. She testified that between her arrest and her sentencing, the prosecutor offered to allow her to plead to a misdemeanor if she was willing to testify in Brown's trial. She testified that she never told the prosecutor that she saw Long or Brown at the scene. She testified that she was subpoenaed to appear at trial, but did not appear, and that she was arrested as a result.

According to Curtis, after she was released in September 2018, she spoke with Long about getting the situation "figured out," and she testified that he "was just sitting there like — like he didn't hear me, like I wasn't speaking to him." She testified that she also attempted to go to the police and tell them what really happened, but that the detective she was supposed to talk to never contacted her. Instead, Curtis prepared a handwritten affidavit, dated March 9, 2020, that she delivered to the public defender's office.

DISTRICT COURT'S ORDER
DENYING MOTION

The district court denied Brown's motion for new trial. The court first agreed with Brown that the alleged newly discovered evidence was material, because it placed Long at the scene of the crime during the relevant timeframe and implied that Long, rather than Brown, was responsible for Alonzo's murder. The court further considered whether Curtis' testimony was evidence which Brown could not have discovered and produced at trial with the exercise of reasonable diligence. The court noted that the record reflected that Curtis was interviewed by multiple entities prior to Brown's trial, but never told anyone that she saw Long or Brown on the night of Alonzo's murder. Based on this, the fact that Curtis did not testify in Brown's trial, and the fact that her account was consistent throughout the course of the police investigation, the court found that Brown could not have, with reasonable diligence, discovered and produced the alleged newly discovered evidence at trial, nor did the record indicate that defense counsel was aware of this evidence and made a strategic decision to withhold it.

However, the court found that Curtis' testimony was not credible, and after noting all the evidence introduced by the State against Brown at trial, the court believed that even if this alleged newly discovered evidence was placed in context with the trial evidence, it probably would not have changed the results of Brown's original trial. The court noted that the "ShotSpotter" location system, Brown's cell phone records, the surveillance video, and the testimony of Brown's friend Stamps demonstrated the strength of the State's case. The court supported its finding that Curtis' testimony was not credible by illustrating that in the several times she was interviewed prior to Brown's trial, she intentionally withheld material information; during the evidentiary hearing on the motion for new trial, Curtis admitted to lying to the police; and her testimony reflected that she is biased toward Brown because she was

dating Brown at the time of Alonzo's death, had made it clear that she did not want to testify against him, and had stated she loved Brown before trial and still loves him.

So, while the court was satisfied that the alleged newly discovered evidence could not have been presented by Brown's counsel at the time of trial, the court found that the evidence lacked the requisite degree of credibility and competency to warrant a new trial. In light of its finding that Curtis was not credible, the court was not satisfied that the evidence was of such a substantial nature that had it been received at Brown's trial, it would have changed the result.

Brown appeals the district court's denial of his motion for new trial. The State cross-appeals.

## ASSIGNMENTS OF ERROR

Brown assigns that the trial court abused its discretion by denying his motion for new trial based on newly discovered evidence.

The State also filed a cross-appeal, assigning that the district court erred in (1) denying the State's motion to dismiss on the ground that Curtis' affidavit did not identify any newly discovered evidence and (2) finding that Curtis' testimony was newly discovered based on the evidence presented at the hearing.

## STANDARD OF REVIEW

[1,2] The standard of review for a trial court's denial of a motion for new trial after an evidentiary hearing is whether the trial court abused its discretion in denying the motion.[2] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable, or when its action is clearly against justice, conscience, reason, or evidence.[3]

---

[2] *State v. Bartel*, 308 Neb. 169, 953 N.W.2d 224 (2021).

[3] *Id*.

## ANALYSIS

Section 29-2101 sets out the seven grounds on which a motion for new trial may be based. At issue in this appeal is § 29-2101(5). Under § 29-2101,

> [a] new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: . . . (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial . . . .

[3] In our opinions interpreting § 29-2101(5), we have found it to impose on defendants a two-prong burden of proof: First, a criminal defendant must show that the evidence at issue has been newly discovered since trial, meaning that the evidence could not, with reasonable diligence, have been discovered and produced at trial.[4] Second, the defendant also must show that the evidence at issue is so substantial that with it, a different verdict would probably have been reached at trial.[5]

[4] With regard to the first prong, we have said that whereas an object is new at the moment that it begins to exist, it is newly discovered once it is revealed or found out to have previously been in existence.[6] Evidence is newly discovered if it existed at the time of trial but has since been uncovered.[7] Because the evidence must have existed at trial for it to be uncovered after the trial, evidence newly created after trial does not satisfy § 29-2101(5).[8] In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] See *id.*

[8] See *id.*

aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial.[9]

[5] With regard to the second prong, we have explained that "materiality" refers to newly discovered evidence that is so potent that by strengthening evidence already offered, a new trial would probably result in a different verdict.[10] However, the newly discovered evidence must be competent and credible.[11] When alleged newly discovered evidence is found to lack credibility, it cannot be said that it would have produced a substantial difference in the result had it been offered and admitted at trial.[12]

The district court found that the version of events described by Curtis at the motion for new trial hearing could not have been discovered with reasonable diligence, given the consistency of Curtis' statements during police interviews and in conversations with the public defender that she did not see Brown the day Alonzo was murdered and did not know who had shot him. The district court found that Curtis' testimony at the hearing on the motion for new trial, if credible, was material, because it placed Long at the scene of the crime such that it implies Long, rather than Brown, was responsible for Alonzo's murder.

But the court ultimately found that the newly discovered testimony would not have produced a substantial difference in the result had it been offered and admitted at trial, because it was not credible. The court found that Curtis' testimony as to this new version of events lacked the requisite degree of credibility and competency necessary to warrant a new trial.

---

[9] *Id.*

[10] *State v. McCormick*, 246 Neb. 271, 518 N.W.2d 133 (1994), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[11] See, *State v. Costello*, 199 Neb. 43, 256 N.W.2d 97 (1977); *State v. Seger*, 191 Neb. 760, 217 N.W.2d 828 (1974).

[12] See *State v. Rosales*, 3 Neb. App. 26, 521 N.W.2d 385 (1994).

We cannot say this was erroneous. The district court took into account, among other things, Curtis' bias toward Brown, Stamps' testimony that Brown had said he "had to put [Alonzo] down," and the surveillance video. We note that the video shows the door to Curtis' residence opened shortly after a male exited a vehicle with a missing hubcap on the front passenger-side tire and walked toward Curtis' residence. A couple of minutes after the door opened at Curtis' residence, a male ran back to the vehicle from the direction of Curtis' residence and drove away. Only after the vehicle drove away did the door to Curtis' residence open for a second time and an individual walked out, presumably Curtis discovering Alonzo's body in the front yard.

[6,7] Appellate courts do not pass on the credibility of witnesses.[13] Witness credibility is a matter for the finder of fact and is not to be reassessed on appellate review.[14] The district court did not abuse its discretion in denying Brown's motion for new trial on the ground that Curtis' new eyewitness account lacked credibility. We accordingly affirm the district court's order denying Brown's motion for new trial.

[8] Given our disposition, we do not address the State's cross-appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[15]

## CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Brown's motion for new trial.

Affirmed.

---

[13] See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[14] See, *State v. Wheeler*, 308 Neb. 708, 956 N.W.2d 708 (2021); *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005).

[15] *Preserve the Sandhills v. Cherry County, ante* p. 184, ___ N.W.2d ___ (2021).