IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SIDNEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAMARE S. SIDNEY, APPELLANT.

Filed January 3, 2023.    No. A-21-640.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Following Jamare S. Sidney's successful motion for postconviction relief due to two prior direct appeals being either improperly filed or dismissed because of counsel's failure to file a brief and notice of appeal, this direct appeal was granted. Sidney appeals from his jury conviction of possession of a firearm by a prohibited person and his sentence of 10 to 15 years' imprisonment. Sidney contends that the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence, that the sentence imposed was excessive, and that his trial counsel was ineffective in various ways. For the reasons stated herein, we affirm Sidney's conviction and sentence but determine that the record on direct appeal is insufficient to address Sidney's claims that trial counsel was ineffective in failing to communicate, failing to meet, failing to adequately review discovery materials, failing to take depositions of Jones and Officers Moore and Sullivan, failing to obtain a DNA test of the rifle and ammunition, and failing to consult,

engage, or retain a fingerprint expert to examine the rifle and ammunition for fingerprints and to provide testimony in support of Sidney's theory that the rifle and ammunition were sufficient surfaces to retain fingerprints.

## II. STATEMENT OF FACTS

### 1. FACTS LEADING TO SIDNEY'S ARREST

During the evening hours of December 16, 2017, into the early morning hours of December 17, Lincoln police officers were investigating a disturbance in front of a downtown Lincoln bar when they heard another disturbance coming from a nearby parking garage. When Officer Mark Moore walked up the entrance ramp to the parking garage, he observed an individual wearing a red sweatshirt, later identified as Sidney, standing close to "a white female and two more black males" later identified as Amber Matthews, Terrell Jones, and Joe Griffin. Moore testified that Sidney was facing southbound and arguing in a "loud and angry" tone with other unseen individuals. As Officer Moore approached Sidney, Jones, Matthews, and Griffin, he observed Sidney remove a rifle resembling an AK-47 from the trunk of Matthews' silver Kia Optima. According to Officer Moore, after removing the rifle from the trunk, Sidney held the rifle in a "sul position" which he defined as being straight toward the ground. Officer Moore retreated to obtain assistance from Officer Patrick Sullivan who then directly followed Officer Moore up the parking garage ramp. When the officers were approximately midway up the entrance ramp, they heard a gunshot and people began running toward them. Officer Sullivan stated that he saw Sidney holding a rifle which was pointed at the south side of the garage. Both Moore and Sullivan stated that they did not see anyone other than Sidney holding the rifle. Officer Moore commanded Sidney to put the rifle down multiple times, however Sidney placed the rifle back into the trunk of the vehicle, then ignoring commands to "freeze," Sidney got into the passenger seat of the vehicle. Officers unsuccessfully attempted to prevent Sidney, Matthews, and Griffin from fleeing in the Kia. Jones complied with the officers' requests and was detained. During a search of the parking garage, Officer Hallowell located a rifle casing and observed damage to another vehicle.

After locating the silver Kia, Officer Andrew Vocasek arrested Sidney, Matthews, and Griffin and conducted a search of the vehicle during which he located a rifle, a rifle magazine, and ammunition. The casing located in the parking garage matched the ammunition found during the vehicle search. These events resulted in Sidney being charged, inter alia, with possession of a firearm by a prohibited person.

### 2. PRETRIAL MOTIONS

The State, pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), filed a motion for an in-camera hearing to disclose evidence that might affect the credibility of one of the State's witnesses. During the hearing thereon, the court received two exhibits offered by the State. The court found that the exhibits had been made available to Sidney and that the information therein would be sealed. Thereafter, the State filed a motion in limine to prohibit Sidney from referencing or exploring any of the *Giglio* evidence except as permitted by a separate order of the court. The district court sustained the State's motion and Sidney's counsel did not further pursue the subject during the course of the trial.

## 3. JURY TRIAL

During the September 2018 jury trial, the State adduced testimony from witnesses including Officers Moore, Hallowell, and Sullivan, who testified to matters as previously set forth. Lincoln Police Department Sergeant Max Hubka, a certified firearms instructor, testified that he collected Sidney's clothing and a bullet fragment that had struck another vehicle in the parking garage. According to Hubka, that bullet fragment was consistent with the rifle used in the shooting and the ammunition seized from Matthew's vehicle. He also surmised that the damage done to the vehicle was consistent with the seized firearm and ammunition.

Additionally, witnesses for the State testified regarding the lack of fingerprint and DNA evidence. Robert Citta, LPD's fingerprint expert, testified that although he attempted to pull fingerprints from the evidence in this case, "there were no fingerprints of comparable value that [he] could work with" on the seized rifle. Citta explained that the smudged, partial, or smeared fingerprints on the rifle did not provide enough ridge detail to perform a fingerprint comparison. He also noted that the rifle was recovered in a trunk full of clothes and other objects which could have affected the integrity of fingerprints on the rifle prior to the analysis. Citta also testified that he swabbed the rifle for DNA but was unaware whether the swabs were tested.

Matthews, who was arrested and charged for her involvement in the shooting, testified on behalf of the State pursuant to a plea agreement. Although Matthews testified that she had previously been in a relationship with Jones, she denied being in a relationship with him at the time of her testimony even though she admitted that she saw Jones prior to her deposition and during one of the weekends prior to the trial. Matthews denied discussing the case with Jones except for indicating that she had been subpoenaed. Matthews testified that on the night of the incident, she, Sidney, Jones, and Griffin, left a downtown Lincoln bar at closing when Sidney was "assaulted" as they were walking to the parking garage where her vehicle was parked. According to Matthews, when they got back to the parking garage, Jones told her to open the trunk of her car and, when she did not do so immediately, Jones instructed her in an angry tone to open the trunk. Matthews testified that she opened the trunk with the vehicle's interior release, then saw Jones retrieve a rifle. She recalled seeing people coming down the middle of the ramp toward them and recalled Jones telling the group, which included Deandre Welch, that there was no problem and that they were leaving. At that time, Matthews testified that Jones, who was standing near the driver's side of the trunk, had the rifle dropped at his side. Matthews stated that Jones placed the rifle back into the trunk but that Sidney picked it up and pointed the rifle toward the back right corner of the garage although not directly at the approaching group. Thereafter, Matthews stated that Sidney lifted the rifle and fired it once toward the southwest corner of the garage. Matthews testified that she was scared and immediately got into the driver's seat of her vehicle and pulled away without knowing who was getting in or out of her vehicle or where the rifle was located. Although Matthews denied seeing or hearing police as she drove off, she admitted that, a few minutes after she left the scene, officers pulled over her vehicle and she was arrested.

In his defense, Sidney called Welch and Griffin as witnesses and testified on his own behalf. Welch denied seeing Sidney with a firearm and testified that he believed Jones fired the shot in the parking garage. Welch stated that although he and Sidney shared a pod in the jail 2

weeks prior to his testimony, they did not discuss the case. Griffin, who is Sidney's cousin, testified that he had borrowed the AK-47 from a friend to go hunting which he had placed into the trunk of his car. Griffin stated that he did not know how the rifle was removed from his car and placed in Matthews' car. He suggested that Matthews and Jones removed the rifle from his car when they placed items into the trunk of his car to make room for the group in Matthews' car. Griffin denied seeing anyone holding the firearm and testified to blacking out due to alcohol consumption.

Sidney denied knowing that the rifle was in Matthews' car and denied knowing the substance of the argument which led to the shooting. However, he testified that Jones demanded that Matthews open the trunk and thereafter, Jones was holding the rifle. Sidney testified that he did not touch the rifle and did not see who shot the rifle because the trunk lid was raised and blocked his view. However, Sidney testified he believed that Jones fired the rifle towards Welch as a result of Jones' and Welch's continued dislike for each other. Additionally, Sidney testified that Matthews and Jones were previously romantically involved, which he believed motivated Matthews to testify falsely as to the identity of the individual who fired the rifle.

Following the close of the evidence, the court instructed the jury. As relevant to this appeal, instruction 7 stated:

> Instruction No. 7, you have heard testimony of . . . Matthews. You should closely examine her testimony for any possible motive she might have to testify falsely. You should hesitate to convict the defendant if you decide that . . . Matthews testified falsely about an important matter and that there is no other evidence to support her testimony. In any event, you should convict the defendant only if the evidence satisfies you beyond a reasonable doubt of his guilt.

The jury adjudged Sidney guilty of possession of a firearm by a prohibited person.

### 4. POSTTRIAL MOTIONS

Sidney filed a motion for a new trial and accompanying affidavit based on, inter alia, newly discovered evidence. In the accompanying affidavit, trial counsel alleged that testimony was adduced from Matthews in a deposition and at trial in which she stated that she was no longer romantically involved with Jones; however, evidence obtained after the trial indicated that Matthews was pregnant with Jones' child and that she saw Jones prior to her deposition. Counsel also indicated that Jones was a key witness but could not be subpoenaed because Jones was on the run from May 18 to September 10, 2018. Counsel contended that if Jones, who could now be subpoenaed, testified, Jones would indicate that he never saw Sidney with a firearm on December 23, 2017, which created reasonable doubt as to who possessed and fired the firearm. Trial counsel argued that additional information had come to light regarding Officer Moore and his bias in the case and counsel requested the court to subpoena email records. In October 2018, the district court granted Sidney's motion for a subpoena duces tecum for the LPD to provide all emails relating to Officer Moore that directly or indirectly inferred a racial bias. However, the court denied Sidney's motion for a new trial stating:

> Both issues that you're talking about here that you raise, that there's some new evidence here, the Court does not believe that this is new evidence.

It goes to this witness's [sic] credibility. Both counsels [sic] asked this witness several questions at several different times. And the fact of the matter remains she was not the only witness that would have put the gun in . . . Sidney's hands. You also had evidence of testimony from the officer in the case.

With regard to the other issue, the *Giglio* issue or other issues regarding the officer, that information is simply information that also is not new evidence, and it's not any other – it's evidence that either was discoverable or could have been discovered.

Counsel was made aware of these issues prior to trial, and the decision to not delve into that any further was the decision of counsel.

The State did not withhold any exculpatory evidence or information to – that it had in its possession to offer as a part of discovery./

For all those reasons, none of these are reasons for a new trial.

In November 2018, Sidney filed a motion for further review of his motion for a new trial based on the alleged newly discovered evidence that Matthews' testimony regarding her relationship with Jones misled the jury along with a pro se motion to reconsider his request for a new trial on that same basis. Sidney indicated that the evidence was in fact newly discovered evidence as "it was later discovered at trial that . . . Jones was identified by the victim as having been the individual who shot the weapon (AK-47) in a parking ramp-the same weapon claimed by the State to have been fired by [Sidney] according to . . . Matthews." Sidney argued that the evidence was an intentional misdirection by Matthews in order to protect Jones, who was the father of her child. Sidney asserted that the district court erred when it found that this was not the type of evidence that fell within the statute authorizing a new trial based on newly discovered evidence. The district court reiterated that it had sustained the motion for further review, considered the exhibits identified by Sidney in his motion, and denied the request for a new trial on the basis that there was no new evidence. Specifically, the district court stated that the evidence

goes to this witness's credibility. Both counsels [sic] asked this witness several questions at several different times. And the fact of the matter remains she was not the only witness that would have put the gun in . . . Sidney's hands. You also had evidence of testimony from the officer in the case.

. . . .

Counsel was made aware of these issues prior to trial, and the decision to not delve into that any further was the decision of counsel.

The State did not withhold any exculpatory evidence in this case, had no other evidence or information to — that it had in its possession to offer as a part of discovery.

## 5. Sentencing

At the November 2018 sentencing hearing, the court received the presentence investigation report, arguments from the State and defense counsel, and statements by Sidney. Sidney's counsel requested that the court also take into consideration Officer Moore's prejudice against

African-Americans as evidenced by his suspension for a racist post. During allocution, Sidney stated:

> I just want to say that I'm innocent. I'm being accused and convicted of a crime that I didn't commit. And I just want to apologize to my family and any and everybody that's been affected by the situation I'm in.
>
> And I ask that before you sentence me to take into consideration my age, that I have kids, and the fact that I had no motivation to commit this crime, and that I don't have a violent criminal history.

The district court stated:

> I take into account the fact that you do not accept responsibility for this crime. I understand that it's your position that you believe that you are innocent, but a jury has found differently, and you were convicted of this crime. Also, I take into consideration the seriousness of this offense, your criminal history, and the fact that you were on federal probation or parole or supervised release at the time of this offense, and that you have had prior offenses involving guns. You've also been placed on probation a couple of times, and those probations were also revoked. I cannot find you're an appropriate candidate for probation. Having regard for the nature and circumstances of the crime, the history, character, and condition of the defendant, the Court finds that imprisonment of the defendant is necessary for the protection of the public because the risk is substantial that, during any period of probation, the defendant would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of [Sidney's] crime and promote disrespect for the law.

The court sentenced Sidney to 10 to 15 years' imprisonment with credit for 331 days served. This direct appeal was granted following a successful motion for postconviction relief due to two prior direct appeals being either improperly filed or dismissed due to counsel's failure to file a brief and notice of appeal.

## III. ASSIGNMENTS OF ERROR

Sidney assigns as error, renumbered and restated: (1) the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence; (2) the sentence imposed was excessive; and (3) trial counsel was ineffective in failing to: (a) communicate, meet with, and adequately review discovery materials with him, investigate his defenses, and prepare for trial; (b) depose the State's witnesses including Jones and Officers Moore and Sullivan to contrast the discrepancies of the descriptions of the suspects contained in police reports; (c) file a motion for independent testing of DNA swabs taken from the rifle and ammunition seized by police in order to show that Sidney's DNA was not on the rifle and that Sidney did not possess the firearm; (d) consult, engage, retain, or file a motion for examination of the rifle to obtain a fingerprint expert to examine the rifle to provide testimony in support of Sidney's theory that the seized rifle and ammunition were sufficient surfaces to retain fingerprints and to prove that he could not have touched the rifle, and (e) object to the State's motion in limine with respect to the witness that was

the subject of the *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), disclosure as the bias, prejudice, or ulterior motive of the witness was relevant for the jury to evaluate the credibility of that witness and was material to Sidney's right to confrontation.

## IV. STANDARD OF REVIEW

The standard of review for a trial court's denial of a motion for new trial after an evidentiary hearing is whether the trial court abused its discretion in denying the motion. *State v. Brown*, 310 Neb. 318, 965 N.W.2d 388 (2021).

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

## V. ANALYSIS

### 1. MOTION FOR NEW TRIAL

Sidney first assigns that the district court erred in denying his motion for a new trial based on newly discovered evidence. Specifically, Sidney argues that the court erred in its finding that additional information proffered by Sidney governing the extent of the relationship between Matthews and Jones including Matthews being pregnant with Jones' child was not newly discovered evidence entitling Sidney to a new trial.

Neb. Rev. Stat. § 29-2101 (Reissue 2016) provides, in pertinent part:

> A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following grounds affecting materially his or her substantial rights: . . . (5) newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial. . . .

In *State v. Brown*, 310 Neb. 318, 326-27, 965 N.W.2d 388, 394-95 (2021), the Nebraska Supreme Court explained:

> In our opinions interpreting § 29-2101(5), we have found it to impose on defendants a two-prong burden of proof: First, a criminal defendant must show that the evidence at issue has been newly discovered since trial, meaning that the evidence could not, with reasonable diligence, have been discovered and produced at trial. Second, the defendant also must show that the evidence at issue is so substantial that with it, a different verdict would probably have been reached at trial.
>
> With regard to the first prong, we have said that whereas an object is new at the moment that it begins to exist, it is newly discovered once it is revealed or found out to

have previously been in existence. Evidence is newly discovered if it existed at the time of trial but has since been uncovered. Because the evidence must have existed at trial for it to be uncovered after the trial, evidence newly created after trial does not satisfy § 29-2101(5). In any but a very extraordinary case in which an utter failure of justice will unequivocally result, a verdict on the evidence at the trial will not be set aside and a new trial granted on the basis of evidence of facts occurring subsequent to such trial.

With regard to the second prong, we have explained that "materiality" refers to newly discovered evidence that is so potent that by strengthening evidence already offered, a new trial would probably result in a different verdict. However, the newly discovered evidence must be competent and credible. When alleged newly discovered evidence is found to lack credibility, it cannot be said that it would have produced a substantial difference in the result had it been offered and admitted at trial.

Here, in his motion for new trial, Sidney argues that following trial, he newly discovered that Matthews was aware that she was pregnant with Jones' child when she testified at trial that she was no longer in a relationship with Jones. During the hearing on Sidney's motion for a new trial, Sidney offered, and the court received, evidence including Matthews' August 23, 2018, deposition testimony, a portion of the trial transcript containing Matthews' testimony governing her disavowed current relationship with Jones, and an exhibit containing screenshots of Matthews' Facebook activity specifically relating to Matthews' relationship with Jones which contained ultrasound photos and remarks in which she identified Jones as the baby's father.

The evidence that Sidney argues is newly discovered is not that Matthews was pregnant with Jones' child on or before trial, but that she was aware that she was pregnant with his child at the time she testified at trial. From the dates that we are able to ascertain from the exhibit containing the relevant Facebook posts, these images and communications were posted after Sidney's trial and do not reveal, on the face of the images or communications, that Matthews was aware she was pregnant with Jones' child on or before the time she testified at trial. But whether the information revealed in Matthews' posttrial Facebook posts amount to newly discovered evidence under the first prong of the two-part test is a matter we need not decide. We find the proposed evidence fails the materiality prong of the two-part test.

In order to be entitled to a new trial for alleged newly discovered evidence, the defendant must show that the evidence at issue is material, meaning the evidence is so substantial that with it, a different verdict would probably have been reached at trial. Here, Sidney, who was convicted of possession of a firearm by a prohibited person, argues that Matthews' nondisclosure of her pregnancy with Jones' child materially altered the jury verdict here. We disagree for several reasons.

First, as the jury was instructed in jury instruction number 3, the State had the burden to show that Sidney possessed a firearm; that at the time that Sidney possessed the firearm he had previously been convicted of a felony; and that Sidney did so on or about December 17, 2017, in Lancaster County, Nebraska. As it relates to those elements, during her testimony, although Matthews admitted to a prior relationship with Jones, she disavowed a current relationship with Jones at the time of trial. Sidney argues that Matthews concealed her relationship with Jones at

trial and that evidence of her pregnancy with Jones' child would have provided valuable impeachment evidence regarding her version of the events. Sidney's theory here is that Matthews attempted to identify Sidney as the perpetrator in order to protect the father of her child, Jones, and that information about her pregnancy would have provided stronger evidence of her bias. After reviewing the record, we note that Matthews testified that both Jones and Sidney were in possession of the firearm, but that it was Sidney that ultimately fired the gun. But the issue at trial was not about who fired the gun, only whether Sidney possessed it. As such, Matthews' acknowledgement that Jones possessed the gun runs contrary to Sidney's theory that her version of the events was fabricated to exonerate Jones.

Second, aside from Matthews' testimony that implicated both Jones and Sidney in possessing the gun, both Officers Moore and Sullivan witnessed, and directly identified, Sidney as possessing the gun. Third, as it relates to Matthews, because of her prior acknowledged relationship with Jones, the trial court instructed the jury in instruction 7:

> You have heard [the] testimony of . . . Matthews. You should closely examine her testimony for any possible motive she might have to testify falsely. You should hesitate to convict [Sidney] if you decide that . . . Matthews testified falsely about an important matter and that there is no other evidence to support her testimony.
>
> In any event, you should convict [Sidney] only if the evidence satisfies you beyond a reasonable doubt of his guilt.

Taken together, we find the record demonstrates that even if evidence of Matthews' knowledge that she was pregnant with Jones' child would have been revealed, that evidence is not so substantial that with it, a different verdict would have probably been reached at trial. Accordingly, we find that, assuming without deciding, Matthews' posttrial Facebook posts constituted newly discovered evidence, admission of that evidence at trial was not so substantial that a different verdict probably would have been reached at trial. Accordingly, we find that the trial court did not abuse its discretion in failing to grant a new trial on this issue.

## 2. EXCESSIVE SENTENCE

Sidney's second assignment of error is that the district court abused its discretion in imposing an excessive sentence by ignoring the statutory factors.

Sidney was convicted of possession of a firearm by a prohibited person, a Class ID felony. See Neb. Rev. Stat. § 28-1206(1) and (3)(b) (Supp. 2017). Class ID felonies are punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020) (statutory sentencing range for Class ID felonies unchanged from Reissue 2016). Sidney's sentence of 10 to 15 years' imprisonment is within the statutory sentencing range. Therefore, we review whether the court abused its discretion in sentencing Sidney based on the relevant factors.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021). The relevant factors for a sentencing judge to consider when imposing a

sentence are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

Due to Sidney's failure to participate in a presentence investigation (PSR) interview or assessment, the information contained in the PSR is limited. At the time of the preparation of the PSR, Sidney was 34 years old. Sidney's written statement contained within the PSR indicated that he has five children. Sidney's criminal history includes convictions for carrying a concealed weapon; possession of a controlled substance; attempted possession of a controlled substance; making false statements to a police officer; driving during suspension; disturbing the peace; failure to appear; driving under the influence; negligent driving; theft by unlawful taking; and other numerous traffic and minor offenses. Sidney has been sentenced to probation twice with probation revoked both times. In federal court, Sidney was convicted of conspiracy to distribute a controlled substance for which he was sentenced to 120 months' imprisonment followed by 60 months of federal supervised release. At the time of his arrest, Sidney was still serving his 60-month supervised release sentence and had a federal hold. Further, during his current incarceration, Sidney was charged with assault by a confined person which offense was bound over to the district court.

During the sentencing hearing, the district court stated that it had considered the seriousness of the offense, Sidney's failure to accept responsibility for the offense, Sidney's criminal history including prior offenses involving guns, Sidney's prior unsuccessful attempts at probation, and the fact that Sidney was on supervised release at the time of the commission of the current offense.

Based on the record and the court's statements, we find no indication that the court improperly weighed or failed to consider the appropriate sentencing factors. Accordingly, we find that the district court did not abuse its discretion in the sentence imposed.

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Sidney's final assignment of error is that his trial counsel was ineffective for failing to (a) communicate and meet with him, adequately review discovery materials with him, investigate his defenses, and prepare for trial; (b) depose the State's witnesses, including Jones and Officers Moore and Sullivan, to contrast the discrepancies of the descriptions of the suspects in the police reports; (c) file a motion for independent testing of the DNA swabs taken from the rifle and ammunition seized by police in order to show that Sidney's DNA was not on the rifle and that Sidney did not possess the firearm as suggested by the State; (d) consult, engage, retain, or file a motion for examination of the rifle, to obtain a fingerprint expert to examine the rifle and to provide testimony in support of Sidney's theory that the seized rifle and ammunition were sufficient surfaces to retain fingerprints, and to prove that he could not have touched the rifle, and (e) object to the State's motion in limine with respect to the witness that was the subject of the *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) disclosure as the bias, prejudice, or ulterior motive of the witness was relevant for the jury to evaluate credibility of that witness and was material to Sidney's right to confrontation.

Recently, in *State v. Drake*, 311 Neb. 219, 236-37, 971 N.W.2d 759, 774 (2022), the Nebraska Supreme Court set forth the directives that must be followed when addressing an ineffective assistance of counsel claim on direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred.

> Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

> The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before an appellate court. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Devers, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Weathers, supra*.

(a) Failure to Communicate, Review, and Advise

Sidney first assigns as error that "trial counsel was ineffective for failing to communicate with him, adequately meet with him, failing to adequately review discovery materials wit[h] him, failing to investigate his defense and failing to prepare for trial." Brief for appellant at 4.

*(i) Failure to Communicate and Adequately Meet*

Regarding Sidney's claims that trial counsel was ineffective for "failing to communicate with him [and] adequately meet with him," he contends that

> he repeatedly contacted trial counsel requesting to be provided discovery material, meet with [trial counsel] to review the discovery, and discuss trial strategy. [Sidney] states . . . that trial counsel only met with him two times, once when he was appointed and once briefly prior to trial. Had trial counsel met or communicated with [Sidney] they could have had a meaningful conversation against him, evaluated potential witnesses[,] and [discussed] trial strategy.

Brief for appellant at 21.

The Nebraska Supreme Court held in *State v. Sierra*, 305 Neb. 249, 266, 939 N.W.2d 808, 825 (2020), that the record regarding the defendant's claim regarding trial counsel's failure to communicate was insufficient to address the issue on direct appeal. Specifically, the court stated:

> [The defendant] raises on direct appeal that the breakdown in communication with his attorney constituted ineffective assistance of counsel. [The defendant] asserts that he met with his attorney only twice before trial. [The defendant] claims he provided his attorney with information and names of potential witnesses at the first meeting. [The defendant] contends that at the second meeting, she took a personal call and then was in a hurry to leave. [The defendant] describes that he had more information that he was attempting to provide his attorney concerning his defense and that she did not consider that information because she was distracted during their second meeting. We find that the record is insufficient for us to address this claim on direct appeal. The nature and extent of meetings in preparation for trial between [the defendant] and his attorney are not in the record.

But see *State v. Mora*, 298 Neb. 185, 200-01, 903 N.W.2d 244, 257 (2017) (defendant's claim that trial counsel failed to adequately communicate with him to prepare defense and to explore his options where counsel "only met with him a few times with an interpreter prior to the commencement of the jury trial" and "did not engage in meaningful conversations about the State's evidence and what evidence [the defendant] had to rebut the charges he faced" were not sufficient allegations of deficient performance).

Because the record before this court does not include the nature and extent of meetings in preparation for trial, we find that the record is insufficient for this court to address Sidney's claims that trial counsel's failure to communicate and meet with him on direct appeal. These claims are preserved.

- 12 -

*(ii) Failure to Review Discovery Materials*

Regarding Sidney's claim that trial counsel was ineffective for failing to "adequately review discovery materials wit[h] him," he argues that this failure prevented him from familiarizing himself with the evidence against him and to assist in trial preparation. Brief for appellant at 4.

In *State v. Woodruff*, 30 Neb. App. 193, 207, 965 N.W.2d 836, 848 (2021), the defendant assigned that

> his trial counsel was ineffective when she "failed to share and review discovery" with him. He argues that he was informed of the existence of certain exculpatory evidence which his counsel did not discuss or review with him prior to the plea hearing.
>
> Because it is not clear what the alleged exculpatory evidence consisted of, nor what communications Woodruff exchanged with his trial counsel, we determine that the record on direct appeal is insufficient to address this claim of ineffective assistance of counsel.

Similarly, here, because the record does not contain what communications Sidney had with trial counsel regarding discovery, the record on direct appeal is insufficient to review this claim; thus, this claim is preserved.

*(iii) Failure to Investigate Defense and Failure to Prepare for Trial*

Next, we address Sidney's claims that trial counsel was ineffective for "failing to investigate his defense and failing to prepare for trial." Brief for appellant at 4.

In *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), the Nebraska Supreme Court held that the defendant's claim that trial counsel was ineffective by "failing to adequately investigate [the defendant's] defenses . . . lacked the specificity we demand on direct appeal." And, in *State v. Santos-Romero*, 31 Neb. App. 14, 19-20, 974 N.W.2d 624, 628-29 (2022), *petition for further review denied* (July 12, 2022), this court found that defendant's claim that trial counsel was ineffective in "failing to investigate the case and in limiting [his] defense" was insufficiently specific where the assigned error "does not specifically identify which aspects of the case trial counsel failed to investigate or in what manner [counsel] limited his defense." See also, *State v. Wood*, 310 Neb. 391, 436-37, 966 N.W.2d 825, 858-59 (2021) (finding that assignment of error that trial counsel was ineffective in "failing to investigate the case fully" lacked required specificity); *State v. Blaha*, 303 Neb. 415, 426, 929 N.W.2d 494, 504 (2019) (assigned error that trial counsel was "ineffective for failing to engage in any pretrial litigation" lacked necessary specificity even after court utilized arguments to expand assignment of error). But see *State v. Weathers*, 304 Neb. 402, 437, 935 N.W.2d 185, 210 (2019) (allegation that "counsel failed to adequately investigate and present several aspects of his defense" could not be resolved on direct appeal where "claims . . . rely on evidence or information that is not included in the record on appeal").

Relying on the Nebraska Supreme Court's opinions in *Mrza, Wood*, and *Blaha*, and our opinion in *Santos-Romero*, we find that Sidney's claim that his trial counsel was ineffective for "failing to investigate his defense [and] failing to prepare for trial," lacks the requisite specificity to preserve the claims.

### (b) Failure to Take Depositions

Next, Sidney assigns as error that "trial counsel was ineffective for not deposing [the] State['] witnesses, particularly . . . Lincoln Police Department Officers Moore, Sullivan, and . . . Jones to contrast the discrepancies of the descriptions of the suspects in the police reports." Brief for appellant at 4. In the argument section of his brief, Sidney claims that

> [t]he depositions of Moore and Sullivan were critical to the preparation of [Sidney's] case. At trial, the critical issue was the identification of the person Moore and Sullivan saw holding a rifle. Had trial counsel taken the deposition of Moore and Sullivan, he could have fleshed out that Moore's description of the person holding the rifle was exactly how Matthews described her boyfriend, Jones, holding the rifle. . . . Had trial counsel taken Sullivan's deposition he could have shown Sullivan the video from the parking garage and got Sullivan to admit he was not off to the side of Moore but was directly behind Moore making it much more difficult to see the scene at the top of the exit ramp. Trial counsel could have taken the deposition of Jones to see if he would admit to holding the rifle to corroborate [Sidney's] defense. By failing to take any of the aforementioned depositions trial counsel failed to competently explore [Sidney's] defenses and failed to prepare for trial.

Brief for appellant at 22.

Here, the record on direct appeal is insufficient to address this claim because there is no evidence as to trial counsel's motivation in failing to depose Jones and Officers Moore and Sullivan, any efforts trial counsel made to do so, and how or whether those matters implicate trial strategy. See *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015) (record insufficient on direct appeal to address defendant's claims that his trial counsel was ineffective in failing to interview, depose, and subpoena several named witnesses where record was silent on whether defendant informed trial counsel of the witnesses and there was no evidence as to trial counsel's motivations in failing to interview and subpoena the witnesses or as to any efforts trial counsel made to do so); *State v. Brooks*, 22 Neb. App. 435, 854 N.W.2d 816 (2014) (record insufficient on direct appeal to address defendant's claim that trial counsel performed ineffectively in failing to independently interview, depose, or subpoena a variety of witnesses where there was no record presented to demonstrate that counsel actually did fail to interview or depose any of the witnesses and the record contains nothing to support defendant's assertions or to indicate what any of the witnesses may have testified).

### (c) Failure to Obtain DNA Test of Rifle and Ammunition

Sidney next assigns that he received ineffective assistance of counsel when his trial counsel failed to file a motion under Neb. Rev. Stat. § 29-1913 (Reissue 2016) to obtain an independent DNA test of the swabs taken from the rifle and ammunition seized by the police. Sidney alleges "that he requested trial counsel to have the DNA swabs taken from the rifle and ammunition assessed for DNA" and "that the results would show that his DNA was not present because he did not touch the rifle." Brief for appellant at 23-24.

Here, the record does not address whether Sidney actually requested that trial counsel have the DNA evidence tested or what steps, if any, trial counsel took regarding DNA evidence. The record on direct appeal is insufficient to address this claim.

### (d) Failure to Retain Fingerprint Expert

Fourth, Sidney asserts that "trial counsel was ineffective for failing to consult, engage or retain a fingerprint expert, to have that expert examine the rifle and ammunition for fingerprints, and to provide testimony in support of [Sidney's] theory that the rifle and ammunition, were sufficient surfaces to retain fingerprints." Brief for appellant at 25. He argues that

> [h]ad [his] trial counsel filed a motion with the District Court to allow the firearm to be examined by an independent expert for fingerprints that expert could have provided testimony that [the] rifle, and ammunition surfaces were sufficient surfaces to retain fingerprints or that it was not likely that the materials in the trunk of the car would have wiped off any fingerprints that were on the rifle. Essentially, the expert could have provided testimony in opposition to the State's fingerprint expert.

*Id*. He further argues:

> Trial counsel could have had the expert examine the rifle and ammunition and had the expert testify about his/her conclusions to refute Citta's testimony. For example, an expert may have been able to locate fingerprints of sufficient quality to lift and therefore be used to exclude [Sidney]. The expert may have also been able to refute Citta's testimony regarding the surface of the rifle and ammunition as being poor surfaces to retain fingerprints. Finally, an expert may have been able to testify that in their opinion and based upon their examination that the lack of fingerprints on the rifle is significant and would prove that [Sidney] did not touch the firearm. At trial, no fingerprint evidence was presented to the jury. It was necessary for [Sidney's] trial counsel to prove [Sidney] did not touch the rifle by any means available to him.

Brief for appellant at 26. Sidney further alleged that he "requested trial counsel to have the rifle and ammunition examined for fingerprints, but trial counsel failed to do so." *Id*.

Here, the record does not address whether Sidney actually requested that trial counsel consult, engage, or retain a fingerprint expert to have that expert examine the rifle and ammunition for fingerprints and to provide testimony in support of Sidney's theory that the rifle and ammunition, were sufficient surfaces to retain fingerprints. The evidence before this court is further lacking on what steps, if any, trial counsel took regarding having an independent examiner examine the fingerprint evidence in this case. The record on direct appeal is insufficient to address this claim.

### (e) Failure to Object to State's Motion in Limine

Sidney's final claim regarding ineffective assistance of trial counsel is trial counsel's failure to object to the State's motion in limine related to the *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) disclosure because the evidence was relevant to impeach

one of the State's witnesses and denied him his right to confrontation as the evidence related to bias, prejudice, or ulterior motive of the witness.

During the pretrial hearing regarding the State's motion in limine to prohibit Sidney from referencing or exploring any of the *Giglio* evidence except as permitted by a separate order of the court, defense counsel stated, "Your Honor, I don't have any objections to the limited purpose of the motion in limine."

An appellate court does not have jurisdiction to consider an error assigned on the grounds that the trial court excluded evidence unless the record reveals an offer of proof or the offer was apparent from the context within which questions were asked. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). In order to preserve the question for appellate review, the offer of proof must occur during trial rather than during an argument regarding a motion in limine. *Id.* A ruling on a motion in limine is not a final ruling on the admissibility of evidence and therefore does not present a question for appellate review. *Id.*

In this case, the defense counsel did not make an offer of proof at trial and therefore the issue is not preserved for appellate review. Further, Sidney did not assign as error that trial counsel was ineffective in failing to make an offer of proof at trial. Accordingly, this claim of ineffective assistance of counsel fails and is not preserved for further review.

## VI. CONCLUSION

For the reasons stated herein, we affirm Sidney's conviction and sentence. However, we determine that the record is insufficient to address Sidney's claims that trial counsel was ineffective in failing to communicate, failing to meet, failing to adequately review discovery materials, failing to take depositions of Jones and Officers Moore and Sullivan, failing to obtain a DNA test of the rifle and ammunition, and failing to consult, engage, or retain a fingerprint expert to examine the rifle and ammunition for fingerprints and to provide testimony in support of Sidney's theory that the rifle and ammunition were sufficient surfaces to retain fingerprints.

AFFIRMED.